## Fusco-Amatruda Company et al. *v.* Tax Commissioner, State of Connecticut

House, C. J., Cotter, Loiselle, MacDonald and Bogdanski, Js.

Argued April 9—decision released June 17, 1975

*Richard B. Cramer,* for the appellant (plaintiff New Haven Jewish Community Council Housing Corporation).

*Richard K. Greenberg,* assistant attorney general, with whom were *Ralph G. Murphy,* assistant attorney general, and, on the brief, *Carl R. Ajello,* attorney general, for the appellee (defendant).

COTTER, J. This is an appeal from a judgment of the Court of Common Pleas dismissing an intervening plaintiff's appeal from a deficiency assessment of a sales and use tax by the defendant against the named plaintiff, hereinafter Fusco, based solely upon purchases of materials used and consumed in the construction of a building for the intervening plaintiff, New Haven Jewish Community Council Housing Corporation, hereinafter Housing Corporation, the sole appellant prosecuting this appeal. It was tried to the court on a stipulation of facts between the parties which was made a part of the record.

The Housing Corporation is a nonstock, nonprofit corporation organized in 1965 for the purpose, as stated in its certificate of incorporation, of providing housing for the elderly on a nonprofit basis. In furtherance of this purpose the Housing Corporation contracted with Fusco, a general contractor, on February 21, 1969, for the construction of an apartment building for the elderly. Construction began March 10, 1969, and was substantially completed March 1, 1971; initial occupancy took place thereafter on March 17. Purchases of all materials involved were made by the general contractor.

Pursuant to his authority under General Statutes § 12-415, the defendant tax commissioner on April 10, 1972, issued a deficiency tax assessment against Fusco based upon purchases of materials used and consumed in the construction of the Housing Corpo-

ration's apartment for the elderly.[1] Fusco appealed that assessment to the Court of Common Pleas pursuant to General Statutes § 12-422; a motion by the Housing Corporation to intervene as coplaintiff was granted. The court found the issues for the defendant and dismissed that appeal.

On this appeal from that judgment, the Housing Corporation claims that Fusco was entitled to an exemption from the sales and use tax deficiency assessment under applicable statutory provisions and regulations promulgated by the defendant. We have stated that "[s]tatutes which grant exemptions from taxation must be strictly construed"; *Renz* v. *Monroe,* 162 Conn. 559, 562, 295 A.2d 558; 68 Am. Jur. 2d, Sales and Use Taxes, § 11; in addition, the burden of proving that an assessment of a deficiency tax was erroneous is on the plaintiff. General Statutes § 12-421; cf. *Stone* v. *Sullivan,* 154 Conn. 498, 501, 227 A.2d 76.

A sales tax is imposed on all retailers making sales in Connecticut by General Statutes § 12-408 (1). Reimbursement for the tax thereby imposed, furthermore, "shall be collected by the retailer from the consumer and such tax reimbursement, termed 'tax' in this and the following subsections, shall be paid by the consumer to the retailer . . . ." General Statutes § 12-408 (2). While the statute does not define the term "consumer," it is generally held that a general contractor who purchases material from a retailer for use in the construction of a building for his customer is the "consumer" of those materials within the meaning of that term as it appears in statutes similar to § 12-408 imposing a sales tax. *G. S. Lyon & Sons*

---

[1] The amount of assessment is not disputed.

*Lumber & Manufacturing Co.* v. *Department of Revenue,* 23 Ill. 2d 180, 185, 177 N.E.2d 316; *State* v. *J. Watts Kearny & Sons,* 181 La. 554, 559, 160 So. 77; *State* v. *Christhilf,* 170 Md. 586, 591, 185 A. 456; *St. Louis* v. *Smith,* 342 Mo. 317, 321, 114 S.W.2d 1017; *Olson Construction Co.* v. *State Tax Commission,* 12 Utah 2d 42, 44, 361 P.2d 1112. Fusco, as the "consumer" of the materials purchased for the construction of the apartment building for the Housing Corporation, was obligated under § 12-408 (2) to reimburse the retailers from whom those materials were purchased and upon whom the sales tax was imposed pursuant to § 12-408 (1).

The use tax, General Statutes § 12-411, is imposed "on the storage, use or other consumption in this state of tangible personal property, purchased from any retailer for storage, use or other consumption in this state . . . ." § 12-411 (1). " 'By the use tax, a broader basis of taxation is established by the inclusion of purchases made without as well as within the state.' " *Stetson* v. *Sullivan,* 152 Conn. 649, 653, 211 A.2d 685, quoting *Connecticut Light & Power Co.* v. *Walsh,* 134 Conn. 295, 299, 57 A.2d 128. As we stated on an earlier occasion, in commenting upon the purpose of the use tax, "[s]peaking generally, the sales tax is imposed upon transactions within the state, and the use tax upon articles bought in other states which, if bought in Connecticut, would be subject to the sales tax." *United Aircraft Corporation* v. *O'Connor,* 141 Conn. 530, 536, 107 A.2d 398. Liability to pay the tax is upon the person "storing, using or otherwise consuming in this state tangible personal property purchased from a retailer . . . ." § 12-411 (2). However, § 12-430 (5) provides for a credit against

any sales tax paid on that property to another state. Thus the use tax is meant to complement the sales tax. *Avco Mfg. Corporation* v. *Connelly,* 145 Conn. 161, 172, 140 A.2d 479. The person "consuming tangible personal property purchased from a retailer" and used in the construction of a building pursuant to a construction contract is ordinarily the general contractor. It is the general contractor who "uses or consumes lumber and the like. He has no intention of reselling the lumber or the other items of construction material which he buys. He is not in the business of selling materials. He is in the business of using them to build houses: the business of contracting, or of selling houses." *G. S. Lyon & Sons Lumber & Manufacturing Co.* v. *Department of Revenue,* supra, 185. We also have stated "[i]n both intrastate and interstate transactions, the ultimate burden of the sales tax and the use tax falls on the purchaser." *Robert Emmet & Son Oil & Supply Co.* v. *Sullivan,* 158 Conn. 234, 239, 259 A.2d 636. Under this reasoning, Fusco, as the general contractor and purchaser of materials in this case, would be the party liable for payment of any use tax that might legitimately be imposed pursuant to § 12-411.

Under General Statutes § 12-412, sales and use taxes imposed by §§ 12-408 and 12-411 "shall not apply to the gross receipts from the sale of and the storage, use or other consumption in this state with respect to the following items: . . . (h) . . . Sales of tangible personal property to charitable and religious organizations." The term "sale" under the statute is defined, in pertinent part, to mean "[a]ny transfer of title, exchange or barter, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property for a con-

sideration." § 12-407 (2) (a). Although the Housing Corporation was issued a tax exemption permit as a "charitable or religious organization" by the defendant on September 24, 1971, there has been no showing that the purchase of materials to be used in the construction of the Housing Corporation's apartment for the elderly constituted "sales" of such property to the Housing Corporation within the meaning of §§ 12-407 (2) (a) and 12-412 (h) thus qualifying the purchase of those materials for an exemption from the sales and use tax under § 12-412 (h). Such purchase might be characterized as a "sale to" the Housing Corporation if the language in the contract between Fusco and the Housing Corporation and the surrounding circumstances supported a conclusion that title to the materials in question passed directly from the retailer or retailers to the Housing Corporation when purchased by Fusco. *Avco Mfg. Corporation* v. *Connelly,* supra, 169, 175. However, unlike the contract in *Avco,* which expressly provided for transfer to and vesting of title in the government of the materials acquired by the general contractor; id., 165 n.2; the pertinent portion of the contract between the Housing Corporation and Fusco, made a part of the record, merely provides that Fusco was to furnish, "at his (its or their) own proper cost and expense . . . all the materials, supplies, machinery, equipment, tools, superintendence, labor, insurance, and other accessories and services necessary to complete the said project." Nowhere in the record is it suggested that the Housing Corporation was in any way meant to become the title-holder or owner of the materials used by Fusco in its construction of the apartment for the elderly at the time of Fusco's purchase of those materials,

such that that purchase might be held to constitute an exempt sale "of tangible personal property" to the Housing Corporation under § 12-412 (h).

Nonetheless, a regulation promulgated by the defendant tax commissioner purports to exempt contractors in Fusco's position from payment of taxes imposed upon "the purchase of all materials or supplies used by him in fulfilling : . . any . . . kind of construction contract . . . where such contractor enters into a construction contract with a religious or charitable organization holding a valid exemption permit." Reg. No. 18 (b) (3) (now § 12-426-18 (b) (3) of the Regulations of Connecticut State Agencies). Regulation No. 16, predecessor of regulation No. 18, became effective October 1, 1947. 15 Conn. L.J., No. 19, pp. 7, 8. It was amended on May 1, 1948; 15 Conn. L.J., No. 50, pp. 7, 8; since that time, it has remained unchanged except for the renumbering of the regulations. The general statutes in effect at the time the amended regulation was promulgated directed the secretary of the state to submit a certified copy of such regulations to the general assembly, and provided that "[a]ny regulation or part thereof disapproved by the general assembly by resolution shall be void and shall not be reissued, and a copy of such resolution shall thereafter be published once in the Connecticut Law Journal." Sup. 1947, § 79i. No resolution was passed by the general assembly specifically disapproving regulation No. 16 (as amended) pursuant to § 79i.

Regulation No. 16 (as amended) was promulgated pursuant to the tax commissioner's authority under Sup. 1947, § 348i, which provided that "[t]he commissioner shall enforce the provisions of this chapter and may prescribe, adopt and enforce rules and

regulations relating to the administration and enforcement of this chapter." Chapter 78a, of which § 348i was a part, was the original Sales and Use Tax Act, the relevant provisions of which corresponded to those in the 1958 Revision which applied in this case. Of course, regulations issued pursuant to authority such as § 348i, if reasonable and consistent with law, have the force and effect of statute. *Hartford Electric Light Co.* v. *Sullivan,* 161 Conn. 145, 154, 285 A.2d 352; 68 Am. Jur. 2d, Sales and Use Taxes, § 143. We also recognize, however, that in all its proceedings the regulatory body promulgating such regulations "must act strictly within its statutory authority, within constitutional limitations, and in a lawful manner." *Southern New England Telephone Co.* v. *Public Utilities Commission,* 144 Conn. 516, 523, 134 A.2d 351. For example, "[n]o administrative or regulatory body can modify, abridge or otherwise change the statutory provisions under which it acquires authority unless the statute specifically grants it that power." *State ex rel. Huntington* v. *McNulty,* 151 Conn. 447, 449, 199 A.2d 5. In the context of the taxing power, this means that an administrative rule or regulation such as regulation No. 16 (as amended) is ineffective if, inter alia, it purports to enlarge an exemption or confer an exemption not conferred by the statute. *Follett's Illinois Book & Supply Store, Inc.* v. *Isaacs,* 27 Ill. 2d 600, 608, 190 N.E.2d 324; *Howard Pore, Inc.* v. *State Commissioner of Revenue,* 322 Mich. 49, 66, 33 N.W.2d 657; *S & M Finance Co.* v. *Iowa State Tax Commission,* 162 N.W.2d 505, 510 (Iowa); *American Distilling Co.* v. *State Board of Equalization,* 55 Cal. App. 2d 799, 803, 131 P.2d 609; 68 Am. Jur. 2d, Sales and Use Taxes, § 143; cf. *Kellems* v. *Brown,* 163 Conn. 478,

498, 313 A.2d 53. As we have indicated, the only exemption relevant to this appeal specifically authorized by the general statutes from liability for payment of sales and use taxes such as those imposed on the purchase of the construction materials involved in this case is one where the purchase constitutes a sale to a charitable or religious organization within the meaning of the relevant terms in §§ 12-412 (h) and 12-407 (2) (a)[2] as construed by this court. The statute does not specifically authorize an exemption from liability for such taxes whenever a contractor such as Fusco enters into a construction contract with a religious or charitable organization. To the extent that regulation No. 16 (as amended) purported to allow such an exemption under prior revisions of the general statutes, and to the extent that its successor, regulation No. 18, purports to allow that exemption under the present statutory scheme, these regulations have represented an attempt by the tax department to confer an exemption not authorized by the legislature. See *Follett's Illinois Book & Supply Store, Inc.* v. *Isaacs,* supra; see also *State ex rel. Huntington* v. *McNulty,* supra.

However, the principle is well established that administrative acts, rules, and regulations unauthorized by the legislature at the time of promulgation may, for the most part, become valid and binding by ratification. *Ex parte Endo,* 323 U.S. 283, 287, 65 S. Ct. 208, 89 L. Ed. 243; *Swayne & Hoyt, Ltd.* v. *United States,* 300 U.S. 297, 301–02, 57 S. Ct. 478, 81 L. Ed. 659; *State ex rel. Norris* v.

[2] These two sections of the General Statutes (Rev. 1958) were reenactments in identical language of Sup. 1947, §§ 334i (h) and 329i (3) (a) which regulation No. 16 (as amended) was intended to implement when promulgated pursuant to § 348i.

*Chancey,* 129 Fla. 194, 176 So. 78; 1 Am. Jur. 2d, Administrative Law, § 71. Ordinarily, some specific reference to the unauthorized regulation by the legislature in a subsequent statute, indicating its acquiescence in the agency's action, is required before the regulation is deemed to have been ratified by the legislature. Ibid; *Mattingly* v. *District of Columbia,* 97 U.S. 687, 690–91, 24 L. Ed. 1098. Significantly, our legislature has never referred to regulation No. 16 (as amended) or its successor, regulation No. 18, in either of the two revisions of the general statutes which reenacted the provisions of Sup. 1947, § 334i specifying the exemptions to be allowed from the sales and use tax. General Statutes (Rev. 1949) § 2096; (Rev. 1958) § 12-412.

If the only legislative treatment of this question were the provisions of Sup. 1947, § 79i merely voiding regulations specifically disapproved by the general assembly, slight cause would exist to hold that regulation No. 16 (as amended) was ratified by the legislature's mere silence[3] and subsequent reenactments[4] of § 334i in § 2096 and § 12-412. However,

---

[3] The proceedings of the legislature disclose no floor discussion of regulation No. 16 (as amended) nor of its successor, regulation No. 18, at the time of the reenactments of the pertinent sections of the General Statutes. To paraphrase a statement in an opinion by Justice Douglas of the United States Supreme Court concerning the question of legislative ratification of rules of law articulated in judicial opinions: "It is at best treacherous to find in . . . [legislative] silence alone the adoption of a controlling rule of law." *Girouard* v. *United States,* 328 U.S. 61, 69, 66 S. Ct. 826, 90 L. Ed. 1084.

[4] It has been stated that the mere reenactment of a statute in subsequent revisions of state and federal statutes can be treated as legislative approval of an unauthorized administrative regulation promulgated by an agency pursuant thereto. See, e.g., *Cammarano* v. *United States,* 358 U.S. 498, 511, 79 S. Ct. 524, 3 L. Ed. 2d 462; *Service* v. *Dulles,* 354 U.S. 363, 380, 77 S. Ct. 1152, 1 L. Ed. 2d 1403; Paul, Studies in Federal Taxation (3d series) 420, 429–30.

the 1947 Supplement to the General Statutes also provided that "[a]ll regulations heretofore made pursuant to law shall remain in effect until such time as they may be disapproved by the general assembly under the provisions of section 79i or revoked or amended under the provisions of section 78i." § 81i.[5] This provision reflected the familiar principle that an unauthorized administrative regulation can be "impliedly" ratified by the legislature and thereby acquire the force of law. *United States v. Arredondo,* 31 U.S. (6 Peters) 538, 555, 8 L. Ed. 547; 1 Am. Jur. 2d, Administrative Law, § 71. The promulgation of regulation No. 16 (as amended) took place in compliance with all of the preliminary procedural requirements specified in the statutes applicable at the time, i.e., §§ 75i, 76i, 79i, 80i, and the regulation was thus made "pursuant to law." In addition, regulation No. 16 (as amended) was neither disapproved by the general assembly under § 79i nor revoked or repealed under § 78i. Thus, while regulation No. 16 (as amended) may have

---

Nonetheless, this doctrine has been severely criticized on the basis that the assumption upon which the doctrine is founded, viz., that the legislature in reenacting such statutes somehow thereby expresses its "knowledge" of the unauthorized regulation in question, fails to take account of the realities of the modern legislative process. *United States* v. *Zions Sav. & Loan Assn.,* 313 F.2d 331, 336 (10th Cir.); *Bloomfield Steamship Co.* v. *Sabine Pilots Assn.,* 262 F.2d 345, 347–48 (5th Cir.), cert. dismissed, 368 U.S. 802, 82 S. Ct. 20, 7 L. Ed. 2d 15; *Safe Harbor Water Power Corporation* v. *United States,* 303 F.2d 928, 934 (Ct. Cl.); Davis, 1 Administrative Law Treatise 327 n.12; cf. *Commissioner* v. *Acker,* 361 U.S. 87, 93, 80 S. Ct. 144, 4 L. Ed. 2d 127. And see also *Helvering* v. *Reynolds,* 313 U.S. 428, 432, 61 S. Ct. 971, 85 L. Ed. 1438, where it was said that the reenactment rule "is no more than an aid in statutory construction," which should apply only to agency constructions of ambiguous statutory terms, not to noninterpretive rules issued under a statute whose terms are not ambiguous.

[5] This provision was reenacted in General Statutes (Rev. 1949) § 287 but was not thereafter reenacted in the Revision of 1958.

been unauthorized by the general statutes when it was originally promulgated, it was impliedly ratified pursuant to § 81i upon the general assembly's refusal to disapprove it; accordingly, the regulation thereafter acquired the force of law, and the exemption conferred thereunder became as effective as if the legislature itself had originally enacted it. *United States* v. *Arredondo,* supra; *Harrison* v. *Snyder,* 217 Ark. 528, 532, 231 S.W.2d 95; 1 Am. Jur. 2d, Administrative Law, § 71.

Regulation No. 16 (as amended) was never subsequently amended or repealed so that it did not subsequently become subject to the requirements applicable to promulgation of new regulations as provided in the succeeding revisions of the general statutes. General Statutes (Rev. 1949) § 284; (Rev. 1958) §§ 4-48; 4-170 (b) (as amended). Nor has regulation No. 16 (as amended) or its successor, regulation No. 18, been disapproved by the general assembly pursuant to applicable provisions of the successive revisions of the general statutes. See, e.g., General Statutes (Rev. 1958) §§ 4-49; 4-170 (a) (as amended). Thus, the exemption from the sales and use tax deficiency assessment allowed to contractors by regulation No. 18, pursuant to which the defendant acted in this case, was effective.

However, regulation No. 18 requires that certain procedural requirements be met before the contractor can claim the exemption. Specifically, the contractor who has entered into a building contract with a religious or charitable organization is obliged to certify to his suppliers that he is building for such an organization "holding a valid exemption permit." The purpose of this requirement, typical

of regulations implementing this type of tax exemption, is to establish the nontaxability of the transaction at the time of the making of a purchase purportedly exempt under regulation No. 18 from the sales and use tax, and thus protect the supplier in not collecting the tax from the contractor. See, e.g., *Zinc Engravers* v. *Bowers,* 168 Ohio St. 43, 47, 151 N.E.2d 226; 68 Am. Jur. 2d, Sales and Use Taxes, § 148. Thus, to have been eligible for the purported exemption allowed by regulation No. 18, Fusco would have had to certify at the time of the making of the purchases involved in this case that the Housing Corporation held a valid exemption permit. Such an exemption permit could have been obtained by the Housing Corporation pursuant to regulation No. 15, which describes the procedure whereby a charitable or religious organization submits proof of its eligibility. Nonetheless, the Housing Corporation in this case did not hold the required exemption permit during the period of time that the coplaintiffs entered into their contract nor when the purchases by Fusco were made. Such a permit was not issued to the Housing Corporation until September 24, 1971.

Although it is sometimes stated that failure to furnish an exemption certificate such as that required under regulations Nos. 15 and 18 prior to the time the purchase in question is consummated raises only a rebuttable presumption that the tax applies; *Sterling Bag Co., Inc.* v. *New York,* 256 App. Div. 645, 648, 11 N.Y.S.2d 297, aff'd 281 N.Y. 269, 22 N.E.2d 369; the general rule is that such provisions, which reasonably regulate the manner in which a purported exemption from taxation shall be established, must be strictly complied with, else the exemption will be treated as lost or waived.

See *Hartford Hospital* v. *Board of Tax Review,* 158 Conn. 138, 147, 256 A.2d 234; *W. A. Storing Co.* v. *Porterfield,* 15 Ohio App. 2d 48, 238 N.E.2d 834; 68 Am. Jur. 2d, Sales and Use Taxes, § 148; 84 C.J.S., Taxation, § 304. Thus, Fusco was not eligible for an exemption from the deficiency assessment under regulations Nos. 15 and 18. The court did not err in reaching the conclusions challenged by the plaintiff or in overruling the plaintiff's claims of law, and properly dismissed the appeal from the deficiency assessment.

There is no error.

In this opinion the other judges concurred.