[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED NOVEMBER 9, 1994
Rich-Taubman Associates ("Rich-Taubman") is a Connecticut general partnership that operates and maintains a parking garage owned by the City of Stamford (the "City"). In performing its duties, Rich-Taubman must make a number of purchases ranging from asphalt to light bulbs. The question presented in this tax appeal is whether these purchases are exempt from the sales and use tax. I conclude that they are not.
Most of the relevant facts have been stipulated, although some additional facts were presented at trial. The dispositive facts can be very briefly stated. The City owns the Stamford Town Center Garage (the "garage"). Rich-Taubman built the garage and operates and maintains it. Its purchases for the garage are made through an account called "Stamford Town Center Garage." This account is controlled by Rich-Taubman and is distinct from the physical garage building owned by the City. All checks for these purchases are signed by employees of Rich-Taubman. The bills are never sent to the City for payment. Under its contract, however, Rich-Taubman is entitled to reimbursement by the City for the expenses it incurs. The contract additionally provides that "the City is solely responsible for any taxes which accrue or arise by reason of [the garage's] existence or operation."
Rich-Taubman has not paid a sales or use tax on any of its purchases for the garage. It has consistently informed its vendors that its purchases were tax exempt because the garage is owned by the City. The Department of Revenue Services ("DRS") has, however, disagreed and, after an audit, found a substantial use tax deficiency. This audit followed an earlier audit that raised many of the same questions. This appeal has now been filed.
Rich-Taubman presents three arguments. First, it contends that the purchases in question were tax CT Page 12127 exempt. Second, it maintains that the purchases were sales for resale. Third, it argues that, even if it should not prevail on the merits, the penalties imposed upon it should be waived. I shall treat each of these arguments in turn.
I. EXEMPTION
Both parties acknowledge that Rich-Taubman's exemption argument turns on the proper construction of Conn. Gen. Stat. § 12-412, which sets forth a number of exemptions from the sales and use tax. That statute provides, in relevant part, as follows:
 Exemptions. Taxes imposed by this chapter shall not apply to the gross receipts from the sale of and the storage, use or other consumption in this state with respect to the following items:
 (1) The United States, the state or subdivisions. Sales of tangible personal property or services to the United States, the state of Connecticut or any of the political subdivisions thereof, or its or their respective agencies.
 (2) Federal exemptions. Sales of tangible personal property or services which this state is prohibited from taxing under the constitution or laws of the United States.
These provisions are, as I shall explain, quite straightforward. Rich-Taubman, however, has submitted an interpretation of § 12-412 that raises numerous problems which must be discussed.
Rich-Taubman argues that in making its purchases it is acting as an agent for the City. Its contract with the City arguably gives it agency status. Assuming, for purposes of argument, that agency status does indeed exist, the legal question presented is whether purchases by agents of exempt entities are, in fact, exempt from taxation.
Rich-Taubman's first argument is a textual one. It points to the fact that the exemption contained in CT Page 12128 § 12-412(1) extends not only to "the United States, the state of Connecticut or any of the political subdivisions thereof" but also to "their respective agencies." (Emphasis added.) Rich-Taubman opines that the word "agencies" is synonymous with "agents." This is simply not the case. "There is a distinct difference in legal connotation between words like `agency' and `instrumentality' on the one hand and the word `agent' on the other." Ciulla v. State, 77 N.Y.S.2d 545, 550
(N.Y. Ct. Cl. 1948). The terms "agency" and "state agency" are used repeatedly in the Connecticut General Statutes to refer to departments, boards, and commissions of the executive department of the state government. This is specifically the case in ch. 58 of the General Statutes, §§ 4a-50 et seq., which governs purchases by "state agencies." Similarly, the statutory reference to "agencies" of political subdivisions of the state is a reference to, for example, town departments or commissions. See, e.g., Conn. Gen. Stat. § 1-18a(a) (defining "agency" for purposes of the Freedom of Information Act). The term "agents" is a much broader term. If the legislature had intended the tax exemption contained in § 12-412(1) to extend to "agents" it could easily have said so. See, e.g., Conn. Gen. Stat. § 4-98
("[N]o budgeted agency nor any agent thereof shall incur any obligation . . . except by the issue of a purchase order and commitment transmitted by the budgeted agency or its agents to the commissioner and the comptroller . . .") (Emphasis added.) Because it did not, Rich-Taubman's textual argument must fail.
Rich-Taubman's second argument is that an exemption for agents of political subdivisions is to be implied from the statutory text. It reasons that such an exemption is necessary to avoid a distinction "between a situation where the tax exempt entity itself acquires the goods or services and a situation where the tax exempt entity acquires the goods or services through an agent hired and legally charged with the responsibility to so act on behalf of the tax exempt entity." Plaintiff's Brief at 5.
The initial problem facing this second argument is that its underlying approach to statutory construction is not one favored by the law. "[A]mbiguities in the CT Page 12129 language or the applicability of statutes governing tax liability are resolved . . . in favor of the tax commissioner if the issue is the right to a deduction or exemption." Kelly-Springfield Tire Co. v. Bajorski,228 Conn. 137, 141-42, 635 A.2d 771 (1993). As our Supreme Court explained a century ago, "Taxation is an act of sovereignty to be enforced, so far as it conveniently can, with justice and equality to all. Exemptions, no matter how meritorious, are of grace, and must be strictly construed. They embrace only what is strictly within their terms." City of Hartford v.Hartford Theological Seminary, 66 Conn. 475, 482-83,34 A. 483 (1895). On its face, § 12-412(1) draws exactly the distinction that Rich-Taubman deplores. It extends an exemption to "the United States, the state of Connecticut or any of the political subdivisions thereof" but not to anyone else, including agents of these political entities. A policy argument can doubtless be made for extending the exemption to agents, but this is a policy argument for the legislature not for the courts.
Even as a matter of tax policy, however, Rich-Taubman cannot prevail in the absence of clear legislation granting it the exemption that it seeks. In Connecticut, the use tax — which is the specific tax at issue here — is imposed on the consumer. Conn. Gen. Stat. § 12-411(1). See Sullivan v. United States, 395 U.S. 169,172 (1969). In this case, Rich-Taubman is plainly the purchaser. It is true that the ultimate incidence of the tax — just like the ultimate cost of the underlying purchases — may fall on the City, but that is a separate question.
In purchasing things like asphalt and light bulbs which will ultimately become part of the garage building, Rich-Taubman is in a position very much like that of the taxpayer in Fusco-Amatruda Co. v. Tax Commissioner,168 Conn. 597, 362 A.2d 847 (1975). The Fusco-Amatruda Company purchased materials that were used in the construction of a building for the New Haven Jewish Community Council Housing Corporation, a tax exempt charitable organization. If the Housing Corporation had purchased the materials directly, the purchases would have been tax exempt. That tax CT Page 12130 exemption was held not to extend to the actual purchaser, Fusco-Amatruda, in spite of the fact that the purchased materials ended up as part of the Housing Corporation's building.
The Fusco-Amatruda court opined that its holding might have been different if the contract between Fusco-Amatruda and the Housing Corporation had provided that title to the purchased materials passed directly from the retailer to the Housing Corporation at the moment of purchase. 168 Conn. at 602. SeeAvco Manufacturing Corp. v. Connelly, 145 Conn. 161,169, 140 A.2d 479 (1958). This dictum is itself of questionable validity in light of United States v. NewMexico, 455 U.S. 720, 734 (1982), which repudiates this very distinction in an arguably analogous case including federal government contractors. But the continued validity of the Fusco-Amatruda proviso need not be considered here since there is no contractual provision that the materials purchased by Rich-Taubman become the property of the City at the moment of purchase. The contract is not for the purchase of materials but for the maintenance of the garage. The purchases were made by Rich-Taubman, and neither the fact that it was in a general sense acting for the City in making the purchases nor the fact that the economic burden of the tax is shifted to the City by the contract relieves Rich-Taubman of the liability to pay the tax. See Alabama v. King Boozer, 314 U.S. 1, 12
(1941). There is a suggestion to the contrary in BillRoberts Inc. v. McNamara, 539 So.2d 1226, 1229 (La. 1989), a case cited by Rich-Taubman, but this suggestion is unaccompanied by any analysis, and I cannot accept it here.
At the end of the day, I find the relevant provisions of § 12-412 to be quite straightforward. Section 12-412(1) grants an exemption for sales to "the United States, the state of Connecticut or any of the political subdivisions thereof." This is an exemption for purchases by the specified political entities and not for purchases by anyone else. Section 12-412(2) expands this exemption to sales exempt "under the constitution or laws of the United States." Under current constitutional law, this includes not only purchases by the CT Page 12131 United States itself — which are already exempt under § 12-412(1) — but purchases by instrumentalities so closely connected to the United States "that the two cannot realistically be viewed as separate entities."United States v. New Mexico, supra, 455 U.S. at 735.
Rich-Taubman is not "the United States, the state of Connecticut, or any of the political subdivisions thereof." It therefore cannot claim the mantle of § 12-412(1). It claims no constitutional protection and therefore cannot claim the mantle of § 12-412(2). For these reasons, its first argument that the purchases in question were tax exempt must fail.
II. RESALE
Rich-Taubman next claims that the purchases in question were sales for resale. The evidence submitted does not support this argument.
There is a statutory presumption that purchases made in Connecticut are subject to the sales and use tax. See Conn. Gen. Stat. §§ 12-410(1) (sales tax) and12-411(9) (use tax). "The burden of proving the contrary is upon the person who makes the sale unless he takes from the purchaser a certificate that the property is purchased for resale." Section 12-411(9). Rich-Taubman has not taken any resale certificates from the City, so it must bear the burden of proving that its asserted sales were made for resale. On the evidence presented here, it cannot carry this burden.
A conclusion as to whether the purchases in question were made by Rich-Taubman for its own use in fulfilling its agreement with the City and were therefore subject to the use tax or were made for resale to the City and were consequently not subject to the use tax "requires a determination of the true object of the contract between the parties." American TotalisatorCo. v. Dubno, 210 Conn. 401, 406, 555 A.2d 414
(1989). See Sanitary Services Corp. v. Meehan, No. 387476 (Tax Session, June 22, 1994) (Aronson, J.). In this case, the true object of the contract was not to buy and sell personal property. It was to maintain and operate a garage. CT Page 12132
Fusco-Amatruda, supra, is once again an analogous case. That case holds that the materials purchased by Fusco-Amatruda were not purchased for resale to the Housing Corporation in spite of the fact that those materials ended up as part of the Housing Corporation's building. In reaching this conclusion, the court heavily relied on an Illinois case, G.S. Lyon Sons Lumber Manufacturing Co. v. Department ofRevenue, 177 N.E.2d 316 (Ill. 1961). See168 Conn. at 601. Lyon Sons holds that a builder who buys materials to build a home which it later intends to sell is not purchasing the materials themselves for resale. This conclusion is supported by two different reasons. In the first place, "building materials, after they have been used in the construction of a house, constitute real estate rather than personal property, and . . . they are not transferred to the homeowner in any form as tangible personal property when the house is subsequently sold." 177 N.E.2d at 318. In the second place, the builder "has no intention of reselling the lumber or other items of construction material which he buys. He is not in the business of selling materials. He is in the business of using them to build houses . . . [T]he materials he buys are taken off the retail market and are no longer objects of the tax." Id. at 319.
Both of these considerations are directly applicable to this case. In the first place, materials like asphalt and light bulbs purchased by Rich-Taubman are transferred to the City when they become part of the garage building itself. At this point, they become part of the real estate and cannot be said to be transferred as tangible personal property. In the second place, Rich-Taubman has no intention of reselling the materials that it buys and cannot be said to be a seller in any meaningful sense of the word. It is, instead, using these materials to perform a service to the City — the service of operating and maintaining the garage. The City is not interested in and did not bargain for, a specified number of light bulbs or a specified amount of asphalt. See Material Service Corp. v. Isaacs,183 N.E.2d 164, 166 (Ill. 1962). It simply wants the garage to be operated and maintained. This is the true object of the contract. For this reason, the purchases in CT Page 12133 question were not made for resale.
III. PENALTIES
Conn. Gen. Stat. § 12-415(4) provides that, "When it appears that any part of the deficiency for which a deficiency assessment is made is due to negligence or intentional disregard of the provisions of this chapter" a penalty of fifteen percent of the deficiency assessment is to be imposed. This penalty can be waived by the court in an appropriate case. In this case, however, the parties stipulated at the hearing that Rich-Taubman had been audited previously and that issues analogous to those raised in this case were addressed at the previous audit. Under these circumstances, the finding of negligence by the DRS rests on a substantial basis. It would be inappropriate to waive the penalty.
IV. CONCLUSION
Judgment shall enter for the defendant. The parties shall submit proposed orders within twenty days of the filing of this decision.