HARTFORD PARKVIEW ASSOCIATES LIMITED PARTNERSHIP ET AL. *v.* JOHN G. GROPPO, COMMISSIONER OF REVENUE SERVICES (13534)

PETERS, C. J., GLASS, COVELLO, HULL and F. HENNESSY, Js.

Argued March 1—decision released May 23, 1989

*John G. Haines,* assistant attorney general, with whom, on the brief, were *Clarine Nardi Riddle,* acting attorney general, and *Joseph I. Lieberman,* former attorney general, for the appellant-appellee (defendant).

*Bourke G. Spellacy,* with whom were *Karen P. Blado* and, on the brief, *Amy S. McCabe,* for the appellees-appellants (plaintiffs).

*Charles H. Lenore* and *Robert W. McKay* filed a brief for the Connecticut Bankers Association et al. as amici curiae.

PETERS, C. J. This tax appeal concerns the applicability of the Connecticut Sales and Use Tax; General Statutes §§ 12-406 through 12-432a; to a hotel's interstate purchase of reservation services and to its intrastate purchase of equipment, furniture and fixtures. The defendant, the commissioner of revenue ser-

vices (commissioner), assessed the plaintiffs, Hartford Parkview Associates Limited Partnership and Parkview Associates Limited Partnership (the taxpayer), for additional use tax liability. Upon the taxpayer's appeal to the trial court, pursuant to General Statutes § 12-422, the trial court sustained the action of the commissioner as to all but $7665.09 of the taxes assessed against the taxpayer. The commissioner has appealed the trial court's holding that reservation service fees were not fees paid for "computer and data processing services" under General Statutes § 12-407 (2) (i) (A), and the taxpayer has cross appealed the court's holding that it was liable for use tax on equipment, furniture and fixtures purchased from Connecticut vendors.[1] We find no error.

I

The question of the taxpayer's use tax liability for the purchase of reservation services arises out of the following stipulated facts. The taxpayer has operated the Parkview Hilton Hotel in Hartford since 1982. The hotel has regularly paid fees for access to the reservation service provided to it by Hilton Reservation Service (HRS) in Dallas, Texas. For customers and potential customers of Hilton Hotels throughout the world, HRS provides information about room availability and confirmation of reservations. The taxpayer uses its computer to inform HRS of room availability and rates, and to ascertain what space reservations HRS has confirmed. When a customer arrives at the taxpayer's hotel, a local computer interface transfers

---

[1] In the trial court, the taxpayer also contested its use tax assessment in two other respects. It claimed that no use tax at all was due on its purchases of furniture, fixtures and equipment because these items had been purchased for "resale" to the hotel's customers, and it claimed that no use tax was collectible for the period preceding January 1, 1982. The trial court found both of these claims to be unpersuasive. In this appeal, the taxpayer has not contested these conclusions of law.

the applicable HRS reservation to the hotel's front office. HRS charges the hotel a fee for each reservation taken.

The commissioner assessed the taxpayer $7665.09 for use tax on its HRS fees. Reservation services are not expressly covered within the enumerated categories of services subject to the use tax. The commissioner maintained instead that the HRS fees constituted the purchase of "computer and data processing services," subject to the use tax pursuant to § 12-426-27 (b) (1) of the Regulations of Connecticut State Agencies.[2] The trial court, however, agreed with the taxpayer that "[t]he essence of HRS services is obtaining and informing the Taxpayer of reservations HRS has made for the Hotel" and that HRS services were therefore not taxable under the relevant statute or regulations governing the purchase of computer services. Accordingly, the trial court disallowed this tax assessment.

Before reviewing the merits of the commissioner's appeal from the trial court's ruling, we must restate the standards that govern the adjudication of this disputed tax assessment. The commissioner maintains that the trial court misconstrued the applicability of the use tax statute and regulations to the taxpayer's payment of fees for HRS services. We review the trial court's ruling from the premise that, when the issue is the imposition of a tax, rather than a claimed right to an exemption or a deduction, the governing authorities must be strictly construed against the commis-

---

[2] At earlier stages in the administrative proceedings against the taxpayer, the department of revenue services had premised use tax liability on two different theories. It had first maintained that HRS services were taxable as management services, under General Statutes § 12-407 (2) (i) (I) and § 12-426-27 (10) of the Regulations of Connecticut State Agencies, and then that they were taxable as telephone answering services under General Statutes § 12-407 (2) (i) (G) and § 12-426-27 (8) of the Regulations of Connecticut State Agencies.

sioner and in favor of the taxpayer. *Zachs* v. *Groppo,* 207 Conn. 683, 689, 542 A.2d 1145 (1988); *Texaco Refining & Marketing Co.* v. *Commissioner,* 202 Conn. 583, 588, 522 A.2d 771 (1987); *Schlumberger Technology Corporation* v. *Dubno,* 202 Conn. 412, 420–23, 521 A.2d 569 (1987).

The commissioner argues that HRS services constitute "computer services" within the terms of General Statutes § 12-407 (2) (i) (A)[3] and § 12-426-27 (b) (1)[4] of the Regulations of Connecticut State Agencies. Under the statute, the use tax applies to the rendering of "certain services for a consideration." Among the services listed in the statute are "(A) Computer and data processing services, including but not limited to, time." The regulation, in turn, defines "computer and data processing services" as "providing computer time, storing and filing of information, retrieving or providing access to information, designing, implementing or converting systems providing consulting services, and conducting feasibility studies." Regs., Conn. State Agencies § 12-426-27 (b) (1). According to the commissioner, HRS services constitute "computer services" because HRS stores and files information about reservations on its computer, and because the taxpayer's own com-

[3] General Statutes § 12-407 (2) (i) (A) provides: " 'Sale' and 'selling' mean and include . . . (i) the rendering of certain services for a consideration, exclusive of such services rendered by an employee for his employer, as follows: (A) Computer and data processing services, including but not limited to, time."

[4] Section 12-426-27 (b) (1) of the Regulations of Connecticut State Agencies provides: "(b) ENUMERATED SERVICES. (1) Computer and data processing services.

"Such services mean and include providing computer time, storing and filing of information, retrieving or providing access to information, designing, implementing or converting systems providing consulting services, and conducting feasibility studies. The transfer of dominion and control of computer hardware and software for a consideration does not come within the purview of this section, since such transfer shall constitute a lease or rental of tangible personal property and be subject to tax under Section 12-426-25."

puter can access that computerized information. Even if, as the trial court found, the computer is merely a tool that is incidental to the function of providing a reservations service, the commissioner maintains that HRS services are still taxable as "computer services." In the commissioner's view, the statute and the regulation impose use tax liability on *any* use of a computer, regardless of the way in which the computer is used.

This argument proves too much. As the trial court observed, the commissioner's construction would subject to use tax liability any commercial transaction in which computers are used to communicate information. The trial court rejected so sweeping an interpretation, holding that "[t]he fact [that] a computer is used in connection with HRS services cannot alone be a basis for the tax. Otherwise, the reach of the statute is unbounded and covers almost all intercorporate computer interfacing." Indeed, such a construction would equate the statute's imposition of tax liability for computer *services* with the imposition of liability for computer *use*. We are not prepared to stretch the language of the statute or the regulation that far.[5]

Contrary to the view of the commissioner, we are persuaded, for two reasons, that, as in other cases involving use tax liability, the applicability of the tax in this case depends upon a determination of the true object of the underlying transaction. See *Dine Out Tonight Club, Inc.* v. *Department of Revenue Services,* 210 Conn. 567, 571, 556 A.2d 580 (1989); *American Totalisator Co.* v. *Dubno,* 210 Conn. 401, 406, 555 A.2d 414 (1989); *White Oak Corporation* v. *Department of Revenue Services,* 198 Conn. 413, 422, 503 A.2d 582 (1986); *Colum-*

---

[5] The disparate theories that the department of revenue services has itself invoked, during the administrative process, for taxing this transaction, see footnote 2, supra, demonstrate that the language upon which the commissioner now relies is not unequivocal in its applicability.

*bia Pictures Industries, Inc.* v. *Tax Commissioner,* 176
Conn. 604, 609–10, 410 A.2d 457 (1979). First, the com-
missioner's own administrative interpretations of
related statutory provisions have regularly invoked an
"essence of the service" test to determine the applica-
bility of the sales and use tax. With respect to actuar-
ial services, which literally might fall within
§ 12-407 (2) (i) (J) as "business analysis and manage-
ment services," the commissioner has drawn functional
lines to distinguish between the nontaxability of actu-
arial calculations and analyses and the taxability of the
rendition of other services. Department of Revenue
Services, Bulletin No. 41, January 19, 1989. The
department's training manual for its field examiners,
in expressly recognizing the nontaxability of an accoun-
tant's incidental use of a computer, emphasizes that
the test of what is a taxable service is "[t]he essence
of what is contracted for." Connecticut Sales and Use
Tax Manual (2/1/86) § 10.2.9, pp. 1, 3.[6] Second, a nar-
row view of the scope of taxpayer liability for "com-
puter services" is entirely consistent with the
proposition that, as presently drafted, the sales and use
tax purports to tax only certain specifically enumer-
ated services rather than commercial services gener-
ally. *Zachs* v. *Groppo,* supra, 692–93.

The trial court found that "[t]he essence of HRS ser-
vices is obtaining and informing the Taxpayer of reser-
vations HRS has made for the Hotel."[7] Because the

---

[6] See, in addition, Department of Revenue Services Bulletin No. 3 (revised
October 14, 1983), entitled "Automatic Data Processing Services and Equip-
ment," which provides in subsection (d) (4) that the conversion of data from
one medium to another does not fall within the statutory definition of
"processing of customer-furnished information."

[7] For this reason, the contrary holding of the trial court in *CCH Compu-
tax, Inc.* v. *Dubno,* Superior Court, Judicial District of Hartford-New Brit-
ain at Hartford, Docket No. 302006 (June 6, 1988) is distinguishable. In
that case, the trial court found that it was "[t]he nature of [the] plaintiff's
function [to render] computer and data processing services."

use of a computer to communicate this information was merely incidental to this objective, the court concluded that the commissioner had not met his burden of proving the taxability of the fees paid for HRS services. The commissioner has not challenged the accuracy of the trial court's factual finding. Accordingly, we affirm the trial court's ruling that HRS fees were not subject to the use tax because the purpose of the taxpayer in contracting for HRS services was to purchase reservations services rather than computer and data processing services.[8]

## II

The taxpayer's cross appeal concerns its use tax liability for purchases of equipment, furniture and fixtures from Connecticut vendors. Before and after the opening of the hotel, the taxpayer purchased various items of equipment, furniture and fixtures necessary for the operation of the hotel. Even for those items it purchased from Connecticut vendors, the taxpayer paid no Connecticut sales tax. The commissioner assessed the taxpayer $26,496.47 for use taxes with respect to these intrastate purchases. The taxpayer claims the benefit of a statutory exemption contained in General Statutes § 12-413 (1), which excludes use tax liability for transactions that are subject to the sales tax. The trial court nonetheless upheld the use tax assessment.

The taxpayer's appeal requires us to interpret § 12-413 (1), which provides that "[t]he storage, acceptance, consumption or other use in this state of services or property, the gross receipts from the sale of which are required to be included in the measure of the sales tax, is exempted from the use tax." Because the issue

---

[8] In light of this conclusion, we need not reach the taxpayer's claim that taxation of the fees paid for the HRS reservation service would constitute an unlawful tax burden on interstate commerce, in violation of the commerce clause of the United States constitution. U.S. Const., art. I, § 8, cl. 3.

that the taxpayer raises concerns the applicability of a statutory exemption, the taxpayer must overcome the presumption that such an exercise of legislative grace is to be strictly construed against the taxpayer and in favor of the taxing authority. *Zachs* v. *Groppo,* supra, 689 n.10; *B.F. Goodrich Co.* v. *Dubno,* 196 Conn. 1, 8–9, 490 A.2d 991 (1985). The trial court interpreted the statute to permit the assessment of use taxes for purchases made within the state, as long as the state has not previously collected a sales tax from Connecticut vendors with regard to the same transactions.

Two questions are raised with regard to the scope of the use tax exemption contained in § 12-413 (1). The broader question is whether, with regard to the sale of goods, the legislature intended a bright line demarcation making the sales tax and the use tax mutually exclusive. According to the taxpayer, the sales tax applies only to sales by Connecticut vendors, and the use tax applies only to out-of-state sales. The narrower question, if the use tax does encompass some sales by Connecticut vendors, is whether this taxpayer, having paid no sales tax, is liable for a use tax on its intrastate purchases of equipment, furniture and fixtures. The trial court correctly resolved both of these questions against the taxpayer.

This court has not previously determined the precise nature of the complementary relationship between our sales and use tax. The Sales and Use Tax Act imposes both taxes and places their ultimate burden on the purchaser. *Fusco-Amatruda Co.* v. *Tax Commissioner,* 168 Conn. 597, 601, 362 A.2d 847 (1975); *International Business Machines Corporation* v. *Brown,* 167 Conn. 123, 128–29, 355 A.2d 236 (1974); *Robert Emmet & Son Oil & Supply Co.* v. *Sullivan,* 158 Conn. 234, 239, 259 A.2d 636 (1969). "The difference between a sales and a use tax is that generally a sales tax is imposed on items acquired within the state and a use tax is imposed

on items acquired outside the state for use within this state." *White Oak Corporation* v. *Department of Revenue Services,* supra, 419; see also *Fusco-Amatruda Co.* v. *Tax Commissioner,* supra, 600. Concededly, the department of revenue services cannot collect both a sales and a use tax on the same transaction.

Guided by these general observations, we must construe the exemption contained in § 12-413 (1), which excludes from the use tax the "use in this state of services or property, the gross receipts from the sale of which are required to be included in the measure of the sales tax . . . . " We do not read this exemption as creating an impermeable barrier between the sales and the use tax. As the trial court observed, the exemption must be read consistently with General Statutes § 12-411 (1), which imposes the use tax on "the storage, acceptance, consumption or any other use in this state of tangible personal property purchased from *any* retailer," without distinction between in-state and out-of-state retailers. (Emphasis added.) Courts in other jurisdictions have interpreted statutory language similar to § 12-413 (1) as designed to avoid double taxation for transactions involving goods purchased for resale, which will *subsequently* become subject to the sales tax. *J. A. Tobin Construction Co.* v. *Weed,* 158 Colo. 430, 434–35, 407 P.2d 350 (1965); *Herman M. Brown Co.* v. *Johnson,* 248 Iowa 1143, 1155, 82 N.W.2d 134 (1957); *Capitol Building Co.* v. *Langton,* 101 R.I. 131, 135–36, 221 A.2d 99 (1966); see contra *Indiana Department of State Revenue* v. *Troy,* 149 Ind. App. 600, 602–603, 274 N.E.2d 302 (1971). That construction is entirely persuasive. We therefore concur in the trial court's conclusion that the use tax may apply to purchases from Connecticut vendors in the proper circumstances.

On the facts of this case, the commissioner cannot be faulted for having imposed use tax liability on the

taxpayer for its purchases from Connecticut vendors. The taxpayer reminds us that its stipulation about the sales tax only encompassed its own nonpayment of this tax, and did not address the possibility that its Connecticut vendors had themselves paid the sales tax on these transactions. A Connecticut vendor would not collect a sales tax for property purchased for resale, and would be entitled to demand a resale certificate from a purchaser in those circumstances. General Statutes § 12-410. The present record, although it contains nothing about a resale certificate, makes it likely that the vendors paid no sales tax for this reason. We may take judicial notice of the nature of the proceedings before the department and the trial court, in which the taxpayer consistently maintained that all of its purchases of equipment, furniture and fixtures had been purchased for resale to its hotel guests, and were hence subject neither to sales nor to use tax. This conduct estops the taxpayer from asserting that it had no role in the vendor's likely failure to have paid a sales tax. We are accordingly unpersuaded by the taxpayer's claim that it is an innocent bystander, a "hapless consumer," unexpectedly confronted by an assessment for a use tax without access to information about what sales tax was paid by its vendor.[9] In order to establish its entitlement to an exemption, the taxpayer necessarily had to come forward with some evidence to substantiate its claim of possible double tax collection.[10]

---

[9] We need not decide today the extent to which *Voloshin Cadillac Co.* v. *Wischert,* 37 Conn. Sup. 642, 644, 433 A.2d 323 (1981) (a vendor cannot later collect from a purchaser a sales tax that should have been added to the original sales price) survives our later decision in *Wesson, Inc.* v. *Hychko,* 205 Conn. 51, 56–60, 529 A.2d 714 (1987) (a vendor can invoke the doctrine of subrogation to collect from a purchaser the amount of motor vehicle fuel taxes that were unbilled because of a mistake of law).

[10] At the very least, the taxpayer could have provided an affidavit about whether it had ever executed a resale certificate with regard to the disputed purchases from Connecticut vendors.

Having failed to substantiate its claim for exemption, the taxpayer cannot prevail in its appeal.

There is no error.

In this opinion GLASS, HULL and F. HENNESSY, Js., concurred.

COVELLO, J., dissenting in part. I respectfully disagree with that portion of the opinion that concludes that "the use tax may apply to purchases from Connecticut vendors in the proper circumstances." Such a statement appears to me to run contrary to the carefully crafted legislative scheme which establishes the relationship between the sales and use tax.

The parties' stipulation stated that the personal property here in issue had been purchased from Connecticut vendors. There is no dispute that these were transactions executed within the state. " 'Speaking generally, the sales tax is imposed upon transactions within the state, and the use tax upon articles bought in other states which, if bought in Connecticut, would be subject to the sales tax.' *United Aircraft Corporation* v. *O'Connor*, 141 Conn. 530, 536, 107 A.2d 398 [1954]." *Avco Mfg. Corporation* v. *Connelly*, 145 Conn. 161, 170, 140 A.2d 479 (1958).

When a purchase from a Connecticut vendor is subject to the sales tax, it is specifically exempted from the use tax. See General Statutes § 12-413 (1).[1] "The use tax provisions — designed to reach the use or consumption in [Connecticut] of property purchased outside it — exempt all transactions which are subject to the sales tax." *Sullivan* v. *United States*, 395 U.S. 169, 172, 89 S. Ct. 1648, 23 L. Ed. 2d 182 (1969).

---

[1] General Statutes § 12-413 (1) provides: "EXEMPTIONS FROM USE TAX. (1) Where sales tax applicable. The storage, acceptance, consumption or other use in this state of services or property, the gross receipts from the sale of which are required to be included in the measure of the sales tax, is exempted from the use tax."

The majority has concluded that the taxpayer has "failed to substantiate its claim for exemption [from the use tax]" by failing "to come forward with some evidence to substantiate its claim of possible double tax collection." I take this to mean that if the taxpayer cannot show that it or the vendor paid a sales tax, then it is liable for the use tax.

The test for exemption under General Statutes § 12-413 (1), however, is not whether the Connecticut vendor actually collected the sales tax (which, by the way, is not known in this case), but whether the transaction is covered by the sales tax statute. I would conclude that exemption from the use tax statute was established in this instance by the parties' stipulation that the personal property in issue was purchased from Connecticut vendors within the state.

I therefore dissent.