[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
At a "hearing" on August 7, 1990 the parties agreed that this case should be decided solely on the evidence contained in a transcript dated March 20, 1989 of a hearing on plaintiff's application for a prejudgment remedy as supplemented by a Stipulation dated January 19, 1990.
The parties have briefed a lot of law but defendants only real defense is that the two parties entered into a contract under the terms of which the Connecticut sales tax is included in the price charged.
Facts
The court finds all of the facts set forth in the Stipulation.
In addition the court finds that services were rendered by plaintiff to defendant and that said services are subject to a sales tax due the state of Connecticut.
At the time the contract was entered into plaintiff did not believe that the proposed services were subject to a sales tax and defendant thought they were. However, defendant claims it thought the sales tax was included in the project costs.
Defendant is a consumer as defined in Fusco-Amatruda Co. v. Tax Commissioner, 168 Conn. 597, 599 and plaintiff is a retailer. C.G.S. 12-407 (12).
The sales tax in this case is "imposed by law on the buyer" and thus the language in defendant's purchase order does not require the plaintiff, seller, to pay the sales tax.
The court also considered the Exhibits A through H and 1 through 4, and all of the arguments of August 7, 1990.
Law CT Page 2521
I. Contract
Because the proposal of November 10, 1986 is the basis of the parties understanding, the court will apply the Connecticut sales tax act in effect on that date.
Conn. Gen. Stats. 12-408 (4) read at the relevant time as follows:
 (4) Unlawful advertising. No retailer shall advertise or hold out or state to the public or to any consumer, directly or indirectly, that the tax or any part thereof will be assumed or absorbed by the retailer or that it will not be added to the sales price of the property sold or that, if added, it or any part thereof will be refunded. Under the provisions of this section, however, a retailer may advertise the sale of tangible personal property by any of the following methods: By stating the sales price alone without reference to the tax; by stating separately the sales price and the amount of tax to be collected thereon; by stating the sales price "plus tax" or "exclusive of tax" or by stating a sales price which includes the tax, together with the words "tax included" or "tax incl."; provided the retailer in the case of all such sales shall maintain his records to show separately the actual price of such sales and the amount of the tax paid thereon; and provided such retailer, if requested, shall furnish the consumer with a sales slip or other like evidence of the sale, showing the tax separately computed thereon. Any person violating any provision of this subsection shall be fined five hundred dollars for each offense.
It is clear that the statute forbids a retailer from holding out "to any consumer, directly or indirectly, that the tax or any part thereof will be assumed or absorbed by the retailer or that it will not be added to the sales price . . . or that, is added, it or any part thereof will be refunded." The court cannot assume that plaintiff did somehow agree to pay the sales tax in violation of that section.[1]
II. Vendor's Right to Collect
Our courts seem to have evolved two different approaches to the problem. In Voloshin Cadillac Co. v. Wischert,37 Conn. Sup. 642, the court denied a vendor which had paid the sales tax to the state the right to later collect the sales tax from a vendee. That court relied exclusively on the language of C.G.S. 12-408 (2) that "[s]uch tax shall be a debt from the consumer to the retailer, when so added to the original sales CT Page 2522 price, and shall be recoverable at law in the same manner as other debts . . ." (Emphasis in court decision). id. 649.
In the Supreme Court case of Wesson, Inc. v. Hychko,205 Conn. 51, albeit in regard to the motor vehicle fuels tax (gas tax), the court did not, of course, read the requirement in C.G.S. 12-457 in the same light as Voloshin read C.G.S.12-408 (2). The gas tax statute only requires that the vendor ". . . shall deliver with each consignment or delivery of such fuels to any purchases within this state, a written statement of . . . the number of gallons sold . . . . Such written statement shall set forth whether or not the required state tax has been charged thereon." It has no language about creating a debt when the tax is added to the original purchase price.
Like our case, Wesson was "an ordinary civil action for debt based upon the undisputed circumstance that the plaintiff has been compelled to pay a tax it mistakenly failed to include in its invoice to the defendant." id. 58. Of course, in the instant case defendant does dispute the circumstances. But once the court finds, as it does, that the taxes were not included in the invoices or in the proposal then Wesson is applicable and its language persuasive. "Once it has been determined, however, that the incidence of the tax was intended to fall upon the purchaser and that the liability imposed on the seller was intended as a device to enforce his responsibility to collect the tax, the purchaser has been required to reimburse the seller despite his error in failing to include the tax in his original invoice or estimate." id. 59. The ultimate burden of the gas tax falls on the purchaser. id. 55-56. In this way it is like the sales tax where the ultimate burden falls on the purchaser. Robert Emmet Son Oil Supply Co. v. Sullivan, 158 Conn. 234,239.
Although Wesson does not mention Voloshin the later case of Hartford Parkview Associates Limited Partnership v. Groppo211 Conn. 246 does, in a footnote. "We need not decide today the extent to which Voloshin Cadillac Co. v. Wischert,37 Conn. Sup. 642, 644 . . . survives our later decision in Wesson . . . ." Footnote 9, page 256. The dissent in Hartford Parkview was written by the justice who, as a superior court judge, wrote Voloshin. His dissent does not include any questions to which Voloshin might provide an answer.
The first sentence of C.G.S. 12-408 (2) would seem at first reading to be "overkill" in regard to assigning rights and responsibilities for collection and payment of the sales tax. It certainly leaves no doubt that the tax "shall be collected by the retailer from the consumer" and it "shall CT Page 2523 be paid by the consumer to the retailer." It then goes on to reinforce the sentence by demanding that "each retailer shall collect from the consumer the full amount of the tax imposed by the chapter." Even the next sentence in its first clause continues to unequivocally assert that the "tax shall be a debt from the consumer to the retailer . . ." It is only the next clause of that sentence which defendant says effectively reverses all those previous "shalls." That clause is, ", when so added to the original sales price,". "When" is obviously used in the American language most often in its temporal sense.
If (or when) used in that temporal sense the debt does not mature until it is added to the original price. Plaintiff has as of May 25, 1988 added it to the original price.
"When" may also be used as a conjunction to mean, "In the event that [or] on condition that." Webster's New International Dictionary, Second Edition. In that usage it is like "if" which also means "1. In case that;. . . or supposing." id. When (or if) we use it in the conditional sense in our case no debt matures because the sales tax was not added to the original price.
It is hard to fathom why a legislative enactment would so thoroughly assign the debt to the buyer and demand the seller collect it and then in that next to last clause completely release the buyer from any obligation to the seller by allowing the buyer to profit from a seller's error. If that were the legislative intent it is also hard to determine why the ambivalent "when"[2] was used.
It is a debt whenever added to the original price and that date it was so added was May 25, 1988 per Exhibits D and 1. The court adds two days for mail delivery.
The court finds the defendant has failed to sustain its burden of proof in regard to both laches and estoppel.
Judgment for plaintiff.
N. O'Neill, J.