## WILLIAM RAVEIS REAL ESTATE, INC. v. COMMISSIONER OF REVENUE SERVICES
### (14896)

Heiman, Schaller and Hennessy, Js.

Argued September 24—officially released December 17, 1996

*Jonathan A. Flatow*, with whom, on the brief, were *Stewart I. Edelstein, Richard L. Albrecht* and *Durwin P. Jones*, for the appellant (plaintiff).

*Jonathon L. Ensign*, assistant attorney general, with whom were *Richard K. Greenberg*, assistant attorney general, and, on the brief, *Richard Blumenthal*, attorney general, for the appellee (defendant).

SCHALLER, J. The plaintiff appeals from the judgment of the trial court upholding the assessment by the defendant commissioner of revenue services (commissioner) of use taxes pursuant to General Statutes § 12-411 on purchases by the plaintiff of goods and services from Connecticut vendors.

The principal issues presented in this appeal are whether the trial court was correct in concluding that (1) the plaintiff was liable for use tax on its in-state purchases, (2) the commissioner was not estopped from assessing the use tax, and (3) the plaintiff was not entitled to equitable relief beyond penalty abatement only as to the in-state purchases. We affirm the judgment of the trial court.

During the time period relevant to this appeal, the plaintiff was engaged in business in Connecticut as a real estate broker. During the period from January 1, 1984, through June 30, 1989 (audit period), the plaintiff purchased goods and services necessary to the conduct of its business from sellers that failed to collect any sales tax or use tax (disputed sales). Some of the disputed sales were made to the plaintiff within Connecticut and some were made outside of Connecticut. The plaintiff did not file any sales or use tax returns with respect to any reporting period included in the audit period. Moreover, the plaintiff did not pay any sales or use tax on the taxable goods and services it purchased in these disputed sales.

The commissioner's audit of the plaintiff's business for sales and use tax liability for the audit period resulted in a use tax deficiency assessment against the plaintiff. The assessment asserted a use tax deficiency plus statutory interest and a penalty. After a hearing in which the plaintiff protested the assessment, the commissioner concluded that it was proper. From that decision, the plaintiff appealed to the Superior Court challenging only the use taxes imposed on its purchases from Connecticut vendors during the audit period on which no sales tax has been collected.

The trial court rejected the plaintiff's claims that its purchases from vendors in the state are exempt from the use tax and that the commissioner should be estopped from assessing the use tax. The trial court ruled, however, that although it would not exercise its equitable powers to reduce the amount of the assessment or to abate the amount of interest, the plaintiff was entitled to an abatement of the penalty imposed for failure to pay use taxes. The plaintiff now appeals from the judgment of the trial court.

"On appeal, it is the function of this court to determine whether the decision of the trial court is clearly

erroneous. See Practice Book [§ 4061]. This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are *clearly erroneous*. . . . *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980). *Cookson* v. *Cookson*, 201 Conn. 229, 242–43, 514 A.2d 323 (1986)." (Emphasis in original; internal quotation marks omitted.) *Kimberly-Clark Corp.* v. *Dubno*, 204 Conn. 137, 153, 527 A.2d 629 (1987).

I

The plaintiff first claims that its purchases from vendors in this state on which the use tax has been assessed are exempt by virtue of General Statutes § 12-413 (1), which provides: "Where sales tax applicable. The storage, acceptance, consumption or other use in this state of services or property, the gross receipts from the sale of which are required to be included in the measure of the sales tax, is exempted from the use tax." The plaintiff argues that this exemption applies whenever a sales tax is imposed pursuant to § 12-411 (1), regardless of whether it has been paid. We disagree.

We note at the outset that "[b]ecause the issue that the taxpayer raises concerns the applicability of a statutory exemption, the taxpayer must overcome the presumption that such an exercise of legislative grace is to be strictly construed against the taxpayer and in favor of the taxing authority." *Hartford Parkview Associates Ltd. Partnership* v. *Groppo*, 211 Conn. 246, 253–54, 558 A.2d 993 (1989).

We begin our analysis by examining § 12-411. The relevant language of § 12-411 (1) provides: "An excise tax is hereby imposed on the storage, acceptance, consumption or any other use in this state of tangible personal property purchased from *any* retailer for storage, acceptance, consumption or any other use in this state . . . ." (Emphasis added.) This provision was broadly written to impose a use tax on in-state users of tangible property and services whether purchased in this state or another state. *Hartford Parkview Associates Ltd. Partnership* v. *Groppo*, supra, 211 Conn. 255.

The pertinent language of § 12-411 (2) provides: "Every person storing, accepting, consuming or otherwise using in this state services or tangible personal property purchased from a retailer . . . is liable for the tax. His liability is not extinguished until the tax has been paid to this state . . . ." Thus, according to § 12-411 (2), it is incumbent upon the taxpayer to provide evidence of payment to the state in order to extinguish liability.

In *Groppo*, our Supreme Court followed the interpretation that several other state courts had adopted in construing statutes with language similar to the exemption provision of § 12-413. The use tax exemption was "designed to avoid double taxation for transactions involving goods purchased for resale, which will *subsequently* become subject to the sales tax." (Emphasis in original.) *Hartford Parkview Associates Ltd. Partnership* v. *Groppo*, supra, 211 Conn. 255. "In order to establish its entitlement to an exemption, the taxpayer necessarily ha[s] to come forward with some evidence to substantiate its claim of possible double tax collection." Id., 256.

In *Groppo*, our Supreme Court stated that under the proper circumstances the use tax may apply to purchases from Connecticut vendors. Id., 255. When the

taxpayer cannot prove payment of sales tax to the in-state vendor, the proper circumstances exist and the taxpayer is liable for the use tax on its in-state purchases. When a taxpayer proves payment of the sales tax to its in-state vendors, there is no liability for the use tax on its in-state purchases. Id., 255–56.

The plaintiff misconstrues the exemption language in § 12-413 (1) as exempting its in-state purchases from the use tax whenever the sales tax applies. The statutory language does not support that interpretation. Moreover, that interpretation is untenable because, if we follow that proposition to its logical conclusion, the plaintiff would enjoy a windfall by virtue of avoiding any obligation to the defendant whenever its vendors fail to collect the sales tax.

The plaintiff also misconstrues the holding in *Groppo*. The plaintiff argues that the present case is distinguishable on the ground that in *Groppo* the taxpayer misrepresented that its hotel furnishings and equipment had been purchased for resale and were thus not subject to the sales or use tax. The taxpayer's conduct contributed to prevent the vendor from collecting the tax and remitting it to the state. The plaintiff claims that it made no representation and performed no act that would have induced its vendors not to collect the sales tax on its in-state purchases.

The interpretation of § 12-413 (1) adopted by our Supreme Court in *Groppo* is equally applicable to this case where the taxpayer has not paid any sales tax to its vendor or to the state and cannot substantiate a claim of double taxation. The *Groppo* holding was not limited to situations where the taxpayer caused its vendor not to collect the tax. The trial court properly concluded that the plaintiff was liable for use tax on its in-state purchases.

## II

The plaintiff claims that the commissioner is estopped from collecting a use tax on the purchases from Connecticut vendors on two grounds: (1) the acquiescence by the commissioner prior to *Groppo* in the opinion, generally held by accountants, that when the sales tax is applicable, no use tax may be imposed; and (2) a ruling by the commissioner in response to an inquiry made by tax counsel on behalf of another corporation owned by the plaintiff's stockholders that the plaintiff claims indicates that the commissioner approved that interpretation. We disagree.

Although the commissioner may be estopped from asserting a subsequent tax liability by his prior ruling, certain conditions must be met before a court can determine that estoppel applies. " 'Under our well-established law, any claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. . . .' *Zoning Commission* v. *Lescynski,* [188 Conn. 724, 731, 453 A.2d 1144 (1982)]." (Citations omitted.) *Kimberly-Clark Corp.* v. *Dubno,* supra, 204 Conn. 148. "In addition, estoppel against a public agency is limited and may be invoked: (1) only with great caution; (2) only when the action in question has been induced by an agent having authority in such matters; and (3) only when special circumstances make it highly inequitable or oppressive not to estop the agency." Id. In this case, the plaintiff failed to satisfy the fundamental requirements necessary to invoke estoppel against a public agency.

## A

The trial court's conclusion that none of the evidence presented at trial indicated that the commissioner took any affirmative action that induced the plaintiff to change its position was not clearly erroneous. Although prior to the decision in *Groppo,* the commissioner did not enforce the collection of use taxes against purchasers who had failed to pay sales tax to their Connecticut vendors, that inaction provides no basis for support of a claim of equitable estoppel. "The doctrine of equitable estoppel is not a bar to the correction by the Commissioner of a mistake of law." *Automobile Club of Michigan* v. *Commissioner of Internal Revenue,* 353 U.S. 180, 183, 77 S. Ct. 707, 1 L. Ed. 2d 746 (1957).

## B

The plaintiff also asserts that the response of Solomon Karam, director of the commissioner's legal division, to an inquiry by George Vest, tax attorney for William Raveis Mortgage Company (mortgage company), establishes equitable estoppel. The inquiry concerned the applicability of the use tax to purchases of that company from an out-of-state vendor with a sufficient Connecticut nexus to make the sales tax applicable.

The plaintiff claims that the mortgage company is owned by the same stockholders as the plaintiff corporation and employed Vest, who specializes in taxation, to advise it concerning questions raised with respect to its liability for Connecticut sales and use taxes. The inquiry sought a response from the commissioner as to whether the mortgage company was liable for Connecticut use tax on fees paid for computer services utilized by it in Connecticut. The commissioner responded that the service was subject to the sales tax. The plaintiff claims that it is entitled to rely on that response issued

to the mortgage company because it has a sufficiently close relationship with the mortgage company to justify its reliance. We disagree.

Karam's letter was directed to the mortgage company and not to the plaintiff. The commissioner's unpublished private letter rulings are issued on a case-by-case basis with reference to the facts of each case. They are designed to assist particular taxpayers where there is a fact-specific question. The commissioner's responses to fact-specific questions about the applicability of particular statutes and regulations are not to be construed as general rules to be relied on by all taxpayers who believe that they are similarly situated. Such a limitation on the effect of private rulings is consistent with the principle that "estoppel against a public agency is limited and may be invoked: (1) only with great caution . . . ." *Kimberly-Clark Corp.* v. *Dubno*, supra, 204 Conn. 148. Limiting the effect of private rulings will encourage the commissioner to respond to informal taxpayer inquiries and will minimize the adverse effects of an erroneous ruling.

Moreover, even if the party distinction were to be ignored, the plaintiff's claim must fail. Karam's letter addressed the sales tax liability with regard to the fees paid by the mortgage company to the out-of-state computer company that has a sufficient nexus to Connecticut. The commissioner's response did not explicitly answer the question posed concerning the liability of the mortgage company for the use tax. The plaintiff chose to infer that, because the sale was subject to the sales tax, it was exempt from the use tax. The commissioner neither made that statement nor induced the plaintiff not to pay the use tax. If the plaintiff had wanted to ask the commissioner for a ruling on its use tax liability on all purchases for which no sales tax had been paid, it could have done so.

"[I]t is the burden of the person claiming the estoppel to show that he exercised due diligence to ascertain the truth and that he not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge." *Pet Car Products, Inc.* v. *Barnett*, 150 Conn 42, 54, 184 A.2d 797 (1962). The plaintiff had a duty to exercise due diligence and to make further inquiry rather than relying on an inference that it drew concerning use tax liability. The trial court found that the plaintiff failed to prove that it had exercised due diligence because there was no evidence that any attempt was made to clarify the commissioner's response to the inquiry by the mortgage company.

C

The plaintiff also failed to establish the other element of estoppel, which requires that the other party "change its position in reliance on those facts, thereby incurring some injury." *Kimberly-Clark Corp.* v. *Dubno*, supra, 204 Conn. 148. The trial court found that there was no change in position because the plaintiff did not have any invoice screening procedures in place to detect use tax liability on out-of-state purchases and, even if the plaintiff had been explicitly told that it was subject to the use tax, there was no reason to believe that the plaintiff would have established such procedures for its in-state purchases. The trial court also found that the plaintiff did not suffer any injury because the commissioner's assessment seeks merely to collect the sales or use tax that was owed to the state at the time of purchase. The trial court correctly concluded that the commissioner was not estopped from assessing the use tax.

III

The plaintiff claims finally that the trial court abused its discretion in refusing to exercise its equitable powers (1) to abate the use tax assessment on its in-state pur-

chases, and (2) to abate the interest accrued on the use tax assessment. We disagree.

General Statutes § 12-422, the statute pursuant to which this appeal was taken, provides in pertinent part: "Any taxpayer aggrieved because of *any* order, decision, determination or disallowance of the commissioner of revenue services . . . may . . . take an appeal therefrom to the superior court for the judicial district of Hartford-New Britain . . . . *Said court may grant such relief as may be equitable . . . .*" (Emphasis added.) " 'The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court.' *Allen* v. *Nissley,* 184 Conn. 539, 546, 440 A.2d 231 (1981)." *American Totalisator Systems, Inc.* v. *Dubno,* 210 Conn. 413, 411–12, 555 A.2d 421 (1989).

A

The plaintiff claims that the trial court abused its discretion in refusing to use its equitable powers to abate a portion of the use tax assessed by shortening the audit period. The plaintiff relies solely on the Superior Court decision in *Duval* v. *Brown,* 31 Conn. Sup. 373, 333 A.2d 63 (1974). In *Duval,* the taxpayer had relied on an accountant to prepare her tax returns. Because the accountant did not realize that a portion of the gross receipts from the taxpayer's catering business was subject to the sales tax, the taxpayer failed to collect the sales tax from her customers. Since the taxpayer did not receive a benefit from her failure to collect the sales tax, the trial court granted a reduction in the audit period.

The *Duval* decision is not binding on this court. It is not persuasive, in any event, because it is readily distinguishable from the present case. Unlike the taxpayer in *Duval,* the plaintiff here did obtain a benefit from its failure to pay the sales or use tax. The trial

court found that the plaintiff's reliance on erroneous tax advice did not warrant a reduction in the amount of the taxes due because if correct advice had been given the plaintiff would have had to pay the full amount of the tax, as other taxpayers who received proper advice and followed it have done. The plaintiff should not be treated more favorably than those who have paid such obligations in full and should not be rewarded for relying on erroneous tax advice.

The trial court concluded, on the basis of its findings, that there was no merit to the plaintiff's claim for an abatement of the use tax found to have been due. The plaintiff has not persuaded us that the trial court's refusal to exercise its equitable powers was an abuse of discretion.

## B

The plaintiff also claims that the trial court abused its discretion in refusing to exercise its equitable powers to abate the amount of the interest included in the assessment. General Statutes § 12-33a provides: "The court shall not waive statutory interest on any amount of tax for which any person is liable pursuant to the provisions of chapter . . . 219 [sales and use tax] . . . and which is not paid within the time specified by law."

The plaintiff contends that § 12-33a is inapplicable to any interest that accrued prior to the effective date of the statute and should operate prospectively only. The trial court rejected this claim and concluded correctly, on the basis of a review of legislative history, that § 12-33a was enacted for the purpose of removing the jurisdiction of the Superior Court to consider an abatement of statutory interest as part of its review of a tax appeal. The trial court further concluded correctly that the statute should be applied retroactively to all appeals except those pending at the time of its enactment, as its terms expressly provide.

The plaintiff also contends that the interest included in the assessment constituted a penalty, despite its designation by § 12-415 (2) as "interest," and that equity should not enforce it. The trial court concluded that no authority was presented to justify a reduction in the interest rates established by § 12-415 (2) simply because they are greater than existing market rates. We conclude, therefore, that the trial court did not abuse its discretion in refusing to abate interest on the use tax assessment.

The judgment is affirmed.

In this opinion the other judges concurred.