## T.W.L.S. MANAGEMENT COMPANY, INC. *v.* GENE GAVIN, COMMISSIONER OF REVENUE SERVICES

Superior Court          Judicial District of          File No. CV980492493S
Tax Session               New Britain

Memorandum filed May 13, 1999*

*Bingham Dana LLP*, for the plaintiff.

*Jonathon L. Ensign*, assistant attorney general, and *Richard Blumenthal*, attorney general, for the defendant.

HON. ARNOLD W. ARONSON, JUDGE TRIAL REFEREE. Rich Taubman Associates, a Connecticut general partnership, is the owner of a public shopping mall known as Stamford Town Center located in Stamford. Rich Taubman Associates (owner) operates Stamford Town Center (mall) using two separate entities, The

---

* Affirmed. *T.W.L.S. Management Co.* v. *Gavin*, 253 Conn. 452, 753 A.2d 361 (2000).

Taubman Company, Inc. (Taubman), and the plaintiff in this appeal, T.W.L.S. Management Company, Inc.

The issue in this case is whether the plaintiff is a wholly owned subsidiary of the owner or an independent personnel agency providing employees for the use of the owner. If the plaintiff is an independent personnel agency, its furnishing of services to the owner would be subject to a sales tax pursuant to General Statutes § 12-407 (2) (i) (c).[1]

The following facts are undisputed. On November 5, 1982, Taubman entered into an agreement with the owner to manage and operate the mall for a period of twenty years. The major components of this contract require Taubman to be the leasing agent for the owner and for Taubman to manage and operate the mall as a first class regional mall. Various portions of Taubman's duties were to collect the rents, utility charges, taxes and assessments from the mall tenants, as well as to "arrange for the maintenance, repair and alteration of the buildings and improvements comprising the [mall] in order to keep the same in a safe, sound, attractive and rentable condition . . . ."

On October 1, 1983, the owner and the plaintiff entered into a services agreement to "provide personnel to Owner for the performance of the following services in and around the [mall]: (a) secretarial; (b) maintenance; (c) janitorial; (d) security; and (e) any other services required for the operation of the common areas of the [mall]." The services agreement was made to be coterminous in time with the owner's agreement with Taubman. The plaintiff is reimbursed by the owner for

[1] General Statutes § 12-407 provides in relevant part: "Whenever used in this chapter . . .

"(2) 'Sale' and 'selling' mean and include . . . (i) the rendering of certain services for a consideration, exclusive of such services rendered by an employee for his employer, as follows . . . (C) services by employment agencies and agencies providing personnel services . . . ."

the compensation paid by the plaintiff to its employees, and for all of its costs and expenses incurred as a result of its provision of personnel and performance of services at the mall. The plaintiff makes no profit from furnishing the services of its personnel to the mall. The plaintiff's employees are hired to work solely at the mall and at no other location.

This case involves the plaintiff's appeal from the denial, by the defendant, Gene Gavin, the commissioner of revenue services (commissioner), of the plaintiff's request for a refund of sales tax paid by it for the period between July 1, 1991, through April 30, 1994.

The commissioner determined that the agreement the plaintiff has with the owner is one for supplying personnel services and, therefore, that those services are subject to the Connecticut sales tax pursuant to § 12-407 (2) (i) (C). The plaintiff argues that the commissioner incorrectly determined that the services it provided were personnel services, in that its employees were not temporary or part-time help. The plaintiff further argues that the services it provided were not sales at retail, for a consideration under General Statutes § 12-408, in that there was no consideration given for the services. The owner simply reimbursed the plaintiff for its costs. The plaintiff claims that the services it rendered were management services, which are exempt from sales and use tax under § 12-407 (8) (B) (vii).[2]

---

[2] General Statutes § 12-407 (8) (B) provides in relevant part: " 'Sales price' does not include any of the following . . . (vii) the amount charged for separately stated compensation, fringe benefits, workers' compensation and payroll taxes or assessments paid to or on behalf of employees of a retailer who has contracted to manage a service recipient's property or business premises and renders management services described in subdivision (i) of subsection (2) of this section, provided, the employees perform such services solely for the service recipient at its property or business premises and 'sales price' shall include the separately stated compensation, fringe benefits, workers' compensation and payroll taxes or assessments paid to or on behalf of any employee of the retailer who is an officer, director or owner of more than five per cent of the outstanding capital stock of the retailer. . . ."

The parties have stipulated that if the plaintiff is entitled to a refund of taxes paid for the July 1, 1991 to April 30, 1994 period, the refund amount shall be $287,433.19.

To resolve the issue in this case we must determine just what the services were that were provided by the plaintiff to the owner. "[T]he applicability of the tax in this case depends upon a determination of the true object of the underlying transaction." *Hartford Parkview Associates Ltd. Partnership* v. *Groppo*, 211 Conn. 246, 251, 558 A.2d 993 (1989). "[T]he commissioner's own administrative interpretations of related statutory provisions have regularly invoked an 'essence of the service' test to determine the applicability of the sales and use tax." Id., 252.

In practice, the owner has divided the operation of the mall into two segments. The first segment was the arrangement with Taubman to handle the leasing of the mall space, the collection of rents, taxes and other charges from the mall tenants. The plaintiff, on the other hand, was created by the owner to handle the day-to-day operation of the mall, which includes cleaning the restrooms, maintenance of and performing janitorial services in the mall common areas, providing secretarial services, dealing with security matters and performing other related management services.

The plaintiff was created by the owner as a wholly owned corporation to manage the mall without earning a profit. Basically, the plaintiff engaged employees on a permanent basis to perform the duties of the company in managing the day-to-day secretarial, security, cleaning and maintenance needs of the mall. Although the owner's agreement with the plaintiff provided for the plaintiff to furnish personnel to the owner, in practice, the plaintiff provided the secretarial, maintenance, security and janitorial services that it was obligated to do under its contract with the owner. The commissioner

reads the contract between the owner and the plaintiff as an agreement to provide only personnel services, as an employment agency would provide. From the factual presentation of the evidence, however, the plaintiff did not act as an employment agency but rather acted as a wholly owned subsidiary with its own employees performing the secretarial, maintenance, security and janitorial services at the mall. The plaintiff had a superintendent at the mall who directed all of the plaintiff's employees in performing the day-to-day management operations. As part of the plaintiff's responsibility in providing services to the owner in managing the mall, the plaintiff engaged in the hiring and termination of employees on a permanent, ongoing basis.

We find the evidence credible that the plaintiff's employees were hired on a permanent ongoing basis, not as temporary, part-time employees. There was no indication that the employees were hired with the understanding that they were temporary. While the commissioner claims that conceptually it is impossible for both Taubman and the plaintiff to manage the mall, it is not in reality impossible to share management responsibilities.

In *AirKaman, Inc.* v. *Groppo*, 221 Conn. 751, 758–61, 607 A.2d 410 (1992), our Supreme Court noted that the term "management" appears in two broad service related fields, real estate and business, and that "management services" include day-to-day operational management of a business. In the present action, Taubman had the responsibility for the leasing and the collection of rents, whereas, the plaintiff had the responsibility of the day-to-day operation of the facility.

The commissioner's own regulations distinguish personnel agencies, which provide temporary or part-time help, and permanent long-term employees being used by the plaintiff for the day-to-day management services

provided to the mall. See Regs., Conn. State Agencies § 12-426-27 (b) (3) (c).[3] Under the facts in this case, we can only conclude that the actual operation involving the plaintiff's employees and the plaintiff was for services between an employer and its employees and, therefore, was outside the scope of § 12-407 (2) (i) (C). In this case, the expenses of the plaintiff for the management services provided by it to the owner are excluded from tax under § 12-407 (8) (B).

Accordingly, judgment may enter for the plaintiff without costs to either party. The commissioner shall refund $287,433.19 to the plaintiff, with interest pursuant to General Statutes § 12-422.

---

[3] Section 12-426-27 (b) of the Regulations of Connecticut State Agencies provides in relevant part: "Enumerated services [subject to the sales tax].
. . .

"(3) . . . [E]mployment and personnel services. . . .

"(c) Personnel services mean and include furnishing temporary or part-time help to others by means of employing such temporary and part-time help directly. . . ."