[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Rich Taubman Associates, a Connecticut general partnership, is the owner of a public shopping mall known as Stamford Town Center located in Stamford, Connecticut. Rich Taubman Associates ("Owner") operates Stamford Town Center ("mall") using two separate entities, The Taubman Company, Inc. ("TCI"), and the plaintiff in this appeal, T.W.L.S. Management Company, Inc. ("T.W.L.S.").
The issue in this case is whether T.W.L.S. is a wholly owned subsidiary of the Owner or an independent personnel agency providing employees for the use of the Owner. If T.W.L.S. is an independent personnel agency, its furnishing of services to the Owner would be subject to a sales tax pursuant to General Statutes § 12-407 (2)(i)(c).
The following facts are undisputed. On November 5, 1982, TCI entered into an agreement with the Owner to manage and operate the mall for a period of twenty years. The major components of this contract require TCI to be the leasing agent for the Owner CT Page 6103 and for TCI to manage and operate the mall as a first class regional mall. Various portions of TCI's duties were to collect the rents, utility charges, taxes and assessments from the mall tenants, as well as "arrange for the maintenance, repair and alteration of the building and improvements comprising the Development in order to keep the same in a safe, sound, attractive and rentable condition." (Stipulation of Facts, 11/5/82 Management Agreement.)
On October 1, 1983, the Owner and T.W.L.S. entered into a services agreement to "provide personnel to Owner for the performance of the following services in and around the Development: (a) secretarial; (b) maintenance; (c) janitorial; (d) security; and (e) any other services required for the operation of the common areas of the Development." (Stipulation of Facts, 10/1/83 Services Agreement.) The services agreement was made to be coterminous in time with the Owner's agreement with TCI. T.W.L.S. is reimbursed by the Owner for the compensation paid by T.W.L.S. to its employees, and for all of its costs and expenses incurred as a result of its provision of personnel and performance of services at the mall. (Stipulation of Facts, 10/1/83 Services Agreement.) T.W.L.S. makes no profit from furnishing the services of its personnel to the mall. T.W.L.S. employees are hired to work solely at the mall and at no other location.
This case involves the plaintiff's appeal from the denial, by the defendant Commissioner of Revenue Services, of the plaintiff's request for a refund of sales tax paid by it for the period between July 1, 1991 through April 30, 1994.
The commissioner determined that the agreement T.W.L.S. has with the Owner is one for supplying personnel services and therefore such services are subject to the Connecticut sales tax pursuant to General Statutes § 12-407 (2)(i) (C).[1] T.W.L.S. argues that the commissioner erred in determining that the services it provided were personnel services, in that the T.W.L.S. employees were not temporary or part time help. T.W.L.S. further argues that the services it provided were not sales at retail, for a consideration under General Statutes § 12-408, in that there was no consideration given for the services. The Owner simply reimbursed T.W.L.S. for its costs. T.W.L.S. claims that the services it rendered were management services, which are exempt from sales and use tax under General Statutes § 12-407 (8)(e).[2]
CT Page 6104
The parties have stipulated that if the plaintiff is entitled to a refund of takes paid for the July 1, 1991 to April 30, 1994 period, the refund amount shall be $287,433.19.
To resolve the issue in this case we must determine just what the services were that were provided by T.W.L.S. to the owner. "[T]he applicability of the tax in this case depends upon a determination of the true object of the underlying transaction." Hartford Parkview Assoc.Ltd. Partnership v. Groppo, 211 Conn. 246, 251, 558 A.2d 993 (1989). "[T]he commissioner's own administrative interpretations of related statutory provisions have regularly invoked the `essence of the service' test to determine the applicability of the sales and use tax." Id., 252.
In practice, the Owner has divided the operation of the Stamford mall into two segments. The first segment was the arrangement with TCI to handle the leasing of the mall space, the collection of rents, taxes and other charges from the mall tenants. T.W.L.S., on the other hand, was created by the owner to handle the day-to-day operation of the mall, which includes cleaning of the restrooms, maintenance of and performing janitorial services in the mall common areas, secretarial services, dealing with security matters and other related management services.
T.W.L.S. was created by the Owner as a wholly owned corporation to manage the mall without earning a profit. Basically, T.W.L.S. engaged employees on a permanent basis to perform the duties of the company in managing the day-to-day secretarial, security, cleaning and maintenance needs of the mall. Although the Owner's agreement with T.W.L.S. provided for T.W.L.S. to furnish personnel to the Owner; in practice, T.W.L.S. provided the secretarial, maintenance, security and janitorial services that TCI was obligated to do under its contract with the Owner. The commissioner reads the contract between the Owner and T.W.L.S. as an agreement to only provide personnel services, as would an employment agency. However, from the factual presentation of the evidence, T.W.L.S. did not act as an employment agency but rather acted as a wholly owned subsidiary with its own employees performing the secretarial, maintenance, security and janitorial services at the mall. T.W.L.S. had a superintendent at the mall who directed all of the employees of T.W.L.S. in performing the day-to-day management operations. As part of the responsibility of T.W.L.S. in providing services to the Owner in managing the mall, T.W.L.S. engaged in the hiring CT Page 6105 and termination of employees on a permanent, ongoing basis.
We find the evidence credible that the T.W.L.S. employees were hired on a permanent ongoing basis, not as temporary, part time employees. There was no indication that the employees were hired with the understanding that they were temporary. While the commissioner claims that conceptually it is impossible for both TCI and T.W.L.S. to manage the mall, it is not in reality impossible to share management responsibilities.
In AirKaman, Inc. v. Groppo, 221 Conn. 751, 758-61,607 A.2d 410, our Supreme Court noted that the term "management" appears in two broad service related fields, real estate and business, and that "management services" include day-to-day operational management of a business. In the present action, TCI had the responsibility for the leasing and the collection of rents, whereas, T.W.L.S. had the responsibility of the day-to-day operation of the facility.
The commissioner's own regulations distinguish personnel agencies, which provide temporary or part time help, and permanent long term employees being used by T.W.L.S. for the day-to-day management services provided to the mall. See Regs., Conn. State Agencies § 12-426-27 (b)(3)(c)[3] Under the facts in this case, we can only conclude that the actual operation involving T.W.L.S.'s employees and T.W.L.S. was for services between an employer and its employees, and therefore was outside the scope of General Statutes § 12-407 (2)(i)(C). In this case, the expenses of T.W.L.S. for the management services provided by T.W.L.S. to the Owner are excluded from tax under General Statutes § 12-407 (8)(e).
Accordingly, judgment may enter for the plaintiff without costs to either party. The commissioner shall refund $287,433.19 to the plaintiff, with interest pursuant to General Statutes § 12-422.
Arnold W. Aronson Judge Trial Referee