[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] ARTICULATION
The respondent-appellee has filed a post trial Motion for Articulation on its special defenses of estoppel and aggrievement. The latter being framed from the court's comments that it has "substantial reservations about that aggrievement," which motion was denied. Subsequent thereto, the respondent-appellee moved for review of the trial court's denial. Virtually contemporaneously with that motion, the appellant also moved for review of the denial of the Motion for Articulation. The Appellate Court has granted the respondent-appellee's motion for review and the requested and ordered articulation follows.
"THE CITY HAS RAISED AGGRIEVEMENT IN ITS SPECIAL DEFENSE, AND WHILE ITHAS BEEN CASUALLY TREATED IN THE COURSE OF TRIAL, THIS COURT HASSUBSTANTIAL RESERVATIONS ABOUT THAT AGGRIEVEMENT." (Memorandum of Decision, filed October 7, 1999, p. 6.)
"INITIALLY, THE COURT HAD SUBSTANTIAL QUESTIONS ABOUT CARBIDE'SAGGRIEVEMENT AND THEREFORE ITS STANDING TO BRING THIS APPEAL. IT REMAINSUNCONVINCED THAT CARBIDE IS INDEED AGGRIEVED." (Memorandum of Decision, p. 49.) CT Page 8098
The burden in the first instance is upon the appellant to clearly demonstrate that it is in fact aggrieved by the action of the board in that its property has been overassessed. New Haven Water Co. v. Board ofTax Review, 166 Conn. 232, 234. Only when the court finds that the action of the board will result in the payment of an unjust and therefore illegal tax, can the court proceed to exercise its broad discretionary power to grant such relief as may be appropriate. It goes without saying that the plaintiffs burden is a difficult one. Uniroyal, Inc. v. Board ofTax Review, 182 Conn. 619, 633-34 n. 8.
The City's assessment of the Carbide property developed by the firm of Cole-Layer-Trumbull by its assistant vice-president, regional manager, and senior industrial appraiser, Harold J. Maddocks, as adjusted and expressed in round figures came to three hundred four million ($304,000,000) dollars. The appellant's efforts to discredit his appraisal, blanched in terms of credibility with the receipt of evidence of an October 22, 1987 meeting among Maddocks, James Barton, and David Keating, Carbide's director of general services and manager of taxes, in this instance, property taxes, respectively. At that meeting and as a result thereof, with information obtained by Maddocks and substantial data provided by the Carbide people, an agreement was arrived at between Maddocks and Keating as to the fair market value of the property in the range of three hundred fifty-five million ($355,000,000) dollars for the Headquarters Facility and the surrounding acreage. A substantial tax savings on the Danbury property was Keating's "mission," as it were on the issue of taxes in general, and the reevaluation in particular. He obviously satisfied that "mission." Carbide's goal achieved by that agreement was an annual tax savings of some six hundred thousand ($600,000) dollars.
If it were necessary to bolster the finding of the agreement and the number set forth therein, such necessity is easily satisfied after Maddocks' successor, Daniel Thomas, sent an assessment notice to Carbide, WHICH NOTICE WAS REDUCED BY TEN MILLION ($10,000,000) DOLLARS WHEN KEATING INFORMED THOMAS OF THE EXISTENCE AND CONTENT OF THAT AGREEMENT. While satisfaction may well be considered a relative concept subject to the vagaries of the passage of time, there is no doubt in this court's mind of the existence of such an agreement, the basis for it in terms of inducement, the result thereof and the accuracy thereof. While Carbide may be disenchanted now, that disenchantment was never manifested during the first several years in the life of the subject evaluation.
The court was quite satisfied with Leary's testimony and with the evaluation he placed upon the property. It used Maddocks' appraisal and Leary's appraisal in reaching its conclusion as to the value of the CT Page 8099 property. It did not accept or find credible the evidence offered by Carbide in its attempt to reduce the assessment. Simply stated, Carbide failed to establish the overassessment of its property and the resultant unjust and therefore illegal taxation thereof. It did not therefore establish aggrievement.
The appellant which would minimize if not negate the existence of the validity and impact of the agreement between the parties, contends in its motion for review of the denial of the Motion for Articulation, that "a property owner who enters into a written agreement establishing fair market value of its property for purposes of property taxation would not generally be able to appeal that agreed upon value." It cites SimonKonover v. City of Hartford, 1996 WL 367745 (Ct. Super., 1996 Aronson, J.); see also Uniroyal, Inc. v. Board of Tax Review, supra, 182 Conn. 619,633 (1981). It recites that no case has been found that held that a taxpayer is estopped from appealing the valuation of its property for purposes of property taxation (a) in the absence of such a written agreement (or a court determination of value) or (b) following discussions with the valuation company. This argument is hardly persuasive or necessarily accurate. The premise may also be expressed and the court chooses to accept this expression that no case has been found that held that taxpayers are estopped from appealing the evaluation of its property for purposes of property taxation based upon an oral agreement or court determination of value following discussions with the valuation company.
"THE CITY HAS PLEADED THIS AGREEMENT FOR A SPECIAL DEFENSE OFESTOPPEL. AN ARGUMENT CAN CERTAINLY BE MADE THAT THE CITY HAS INDEEDESTABLISHED SUCH DEFENSE." (Memorandum of Decision, p. 13.)
Under our well established law, any claim of estoppel is predicated upon proof of two essential elements. The party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief, and the other party must change his position and reliance on those facts thereby incurring some injury. Chotkowski v. State, 240 Conn. 246, 268;Zoning Commission v. Lescvnski, 188 Conn. 724, 731; William Raveis RealEstate, Inc. v. Commissioner of Revenue Services, 43 Conn. App. 744,750. The estoppel argument in these cases ordinarily is asserted by an appellant against the respondent as opposed to the respondent asserting such argument against the appellant as exists here. See, e.g., WestHartford v. Rechel, 190 Conn. 114, 121 (1983).
This court is satisfied that the special defense of estoppel was adequately addressed on pages 12 and 13 of its Memorandum of Decision. However, for purposes of this articulation, the court will address the CT Page 8100 salient questions which must be answered to establish the elements of this defense. Just what action has the appellant undertaken and/or what has it said which is calculated or intended to induce another party (the respondent) to believe that certain facts exist and to act on that belief? How has the other party changed his position in relying thereon thereby incurring some injury?
The action taken and the words spoken by the appellant are found in the meeting between Maddocks on behalf of the City, and Barton and Keating representing Carbide, on October 22, 1987. That meeting included a discussion of what Maddocks had found to that date and general data about the property freely and willingly provided by Carbide. As a result of that meeting, an agreement was reached between Maddocks and Keating which set to the fair market value of the property and the range of three hundred fifty-five million ($355,000,000) dollars for the Headquarters Facility and the surrounding acreage. That agreement produced an annual tax savings of six hundred thousand ($600,000) dollars for Carbide.
After Maddocks was discharged by CLT, one Daniel Thomas assumed his duties in November of 1987. He sent an assessment notice to Carbide which generated a complaint from Keating mid-December that year that the valuation set forth in notice from Thomas was higher than the parties had agreed to in October of that year. Thomas, on behalf of the respondent in reliance upon that agreement, reduced the assessment notice by ten million ($10,000,000) dollars. Carbide's attempts to refute the claimed agreement were exposed as false when Keating was presented with a document which indeed referred to the existence of that agreement. Keating's own hand lent credence to the City's claim of such an agreement and completely and thoroughly nullified Carbide's position that there was no such contract.
This court is thoroughly satisfied and finds that the City, in accordance with the credible evidence offered by this respondent, has indeed established that special defense of estoppel which it pleaded.
Moraghan, J.